IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROSFEL GARZA, | § | |
| TDCJ-CID NO.01181215, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION H-09-1433 |
| | § | |
| MARKETTE MILLER, *et al.*, | § | |
| Defendants. | § | |

## OPINION ON DISMISSAL

Plaintiff, state inmate Rosfel Garza., filed a *pro se* complaint alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entry No.1). Plaintiff seeks to amend his complaint to seek compensatory damages of $20,000.00 from each defendant. (Docket Entry No.9). The Court will grant plaintiff's motion to amend.

Defendants Markette Miller, Jordan Boone, Kenneth Dossey, Steve Miller, Gabriel Pinon, and Charles Siringi have filed a motion for summary judgment. (Docket Entry No.19). Plaintiff has not filed a response to the summary judgment motion. For the reasons to follow, the Court will grant defendant's motion for summary judgment and dismiss all claims against all defendants.

## I. BACKGROUND

Plaintiff alleges the following facts, which he claims gave rise to the pending complaint:

Around 4:30 p.m., on December 14, 2007, Sgt. Markette Miller ("M. Miller") and Officer Jordan Boone ("Boone") stopped plaintiff in the hallway because plaintiff was talking. (Docket Entry No.1). Boone ordered plaintiff to empty his pockets and then to submit to a strip

search; plaintiff complied. (*Id*.). Because plaintiff did not have his identification card ("ID card"), he was ordered to retrieve the card before going to dinner in the chow hall. (*Id*.). Plaintiff walked back to his section, where Officer Butcher was working. (*Id*.). Butcher allowed a cleaning crew SSI to retrieve plaintiff's card from plaintiff's cell and was present when the SSI handed the card to plaintiff. (*Id*.).

Plaintiff walked back toward the chow hall, where M. Miller and Boone stopped him and told him that he could not eat dinner chow. (*Id*.). Plaintiff protested calmly that he had obeyed orders and requested to speak to Major Steve T. Miller. Sgt. M. Miller cuffed plaintiff and ordered him to stand against the bars or wall and then said to Officer Boone, "[I]ts your call, whatever happens, we will ride it out." (*Id*.). Officer Boone was quiet. Sgt. M. Miller "got in plaintiff's face yelling, so plaintiff began backing up for space." (*Id*.). Sgt. M. Miller then punched plaintiff in the back of his head and kicked plaintiff. (*Id*.). He called plaintiff a "Mexican Muslim." (*Id*.). Officer Boone ordered two inmates in the area to inform another officer to keep inmates in a nearby dayroom away from windows and doors so that they could not see the altercation. (*Id*.). Officer Boone then joined the assault and hit plaintiff with a large brass key and kicked plaintiff as he lay on the floor in handcuffs. (*Id.*).

When he arrived at the scene, Officer Kenneth J. Dossey found plaintiff on the floor handcuffed and restrained by Sgt. M. Miller. (*Id*.). While plaintiff cried out to Major Steve Miller and Officer Gabriel Pinon to help him, Dossey joined in the assault by punching and kicking plaintiff in the head several times and plaintiff blacked-out. (*Id*.). Two unknown officers arrived and ordered inmates in the dayrooms to stand back from the doors and windows. One of the unknown officers punched and kicked plaintiff. (*Id*.). One officer told M. Miller to remove the handcuffs because the video-camera operator was almost in range. (*Id*.). The cuffs

2

were removed and the operator began to film M. Miller restraining plaintiff on the floor, putting handcuffs back on plaintiff. (*Id.*). Dossey and an unknown officer lifted plaintiff off the floor, took his ID card from his shirt pocket and gave it to Major Steve Miller, and transported plaintiff to the infirmary. (*Id.*). While in the infirmary, plaintiff heard officers instruct Nurse Jane Doe what to put in the medical report. (*Id.*). Plaintiff's ID card was presented to the Nurse. (*Id.*).

Plaintiff was given a disciplinary case for creating a disturbance and failing to obey an order to retrieve his ID card. (*Id.*). Captain Charles Siringi, the disciplinary hearing officer ("DHO"), and plaintiff's substitute counsel avoided plaintiff's claim that he possessed the ID card when stopped the second time by Boone and Miller and avoided his claim that a SSI had retrieved the card for him. (*Id.*). At the hearing on January 7, 2008, plaintiff noted for the record that he did not create a disturbance and did not fail to obey orders and that the use-of-force video would show that an officer took his ID card from his shirt pocket. (*Id.*). Siringi, however, refused to review the video and found plaintiff guilty of failing to obey orders to get his ID card. (*Id.*).

Plaintiff complained to the Office of Inspector General ("OIG") that the officers "savagely attacked" him but he was informed that they would take no action. (*Id.*).

Plaintiff filed a civil rights complaint on July 30, 2008, and a more definite statement of his claims on December 22, 2008. *Garza v. Miller*, Civil Action No.4:08cv3421 (S.D. Tex. Mar. 31, 2010) (Docket Entries No.1, No.16). The Court granted plaintiff's motion to withdraw the complaint on January 5, 2009, and his motion to reinstate on October 16, 2009. *Id.*, Docket Entries No.18, No.19, No.21. On March 31, 2010, the Court dismissed Civil Action No.4:08cv3421 because plaintiff's complaint was duplicative of the pending complaint. *Id.*, Docket Entries No.22, No.23.

In the pending complaint signed on April 29, 2009, plaintiff seeks compensatory and punitive damages on the following grounds:

1. Defendants Boone, Dossey, Markette Miller, and John Doe 1 violated the Eighth Amendment's prohibition against cruel and unusual punishment by using excessive force without need or provocation;

2. Defendants Major S. Miller, Officer John Doe 2, Captain Gabriel Pinion violated the Eighth Amendment by failing to intervene to prevent the misuse of force;

3. DHO Captain Siringi violated plaintiff's right to due process guaranteed by the Fourteenth Amendment by finding him guilty of failing to obey an order without allowing plaintiff to call witnesses or present exculpatory evidence; and,

4. Nurse Jane Doe violated plaintiff's Eighth Amendment rights by covering up the use of excessive force.

(Docket Entries No.1, No.9).

Defendants move for summary judgment on grounds that there is no genuine issue of material fact. (Docket Entry No.19). Defendants assert the defenses of qualified immunity and Eleventh Amendment immunity. (*Id.*). They also move to dismiss plaintiff's due process claim against defendant Siringi. (*Id.*).

## II. SUMMARY JUDGMENT

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to

show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

### A. Disciplinary Hearing

Plaintiff claims that DHO Captain Siringi violated his right to due process guaranteed by the Fourteenth Amendment by finding him guilty of failing to obey an order without allowing plaintiff to call witnesses or present exculpatory evidence. (Docket Entry No.1). Prisoners charged with rule infractions are entitled to certain due process rights under the Fourteenth Amendment when disciplinary action may result in a sanction that impinges upon a

5

liberty interest. *Hudson v. Johnson*, 242 F.3d 534, 535-36 (5th Cir. 2001). In Texas, however, only sanctions that result in the loss of good time credits for inmates who are eligible for release on mandatory supervision or that otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest. *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *Orellana v. Kyle,* 65 F.3d 29, 31-33 (5th Cir. 1995).

The Court takes judicial notice that in the More Definite Statement filed in Civil Action No.4:08cv3421, plaintiff indicates that he is not entitled to release to mandatory supervision. *Garza*, Civil Action No.4:08cv3421, Docket Entry No.16. Plaintiff's due process claim against DHO Captain Siringi, therefore, is not cognizable because plaintiff does not have a liberty interest in the punishment assessed for the disciplinary violation that would implicate due process.

Even if plaintiff were entitled to mandatory supervision, his due process claims against DHO Siringi are subject to dismissal. In *Heck v. Humphrey*, the Supreme Court held that "[a] section 1983 claim that effectively attacks the constitutionality of a conviction or imprisonment does not accrue until that conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) (quoting *Heck*, 512 U.S. 477, 486-87 (1994)). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Heck*, 512 U.S. at 486-87. When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Id*. at

487. If it would, the court must dismiss the complaint unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id*. A "conviction" for purposes of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641 (1997).

Plaintiff does not allege and the record does not show that his disciplinary conviction has been invalidated. A favorable judgment on plaintiff's claims would necessarily imply the invalidity of plaintiff's disciplinary conviction, thus, barring the claims under *Heck*, if the testimony of excluded witnesses and the documentary evidence required an acquittal of the disciplinary charge. Even if plaintiff seeks redress for the deprivation afforded to him in the context of the disciplinary hearing, his due process claim would fail. If the omission of the witness or document would not have brought about a different result at the disciplinary hearing, thereby calling into question the validity of his conviction, the omission of that witness or evidence is harmless. Absent a showing of harm or that his proceeding was rendered fundamentally unfair, plaintiff has no due process claim. *See, e.g., United States v. Carreon*, 11 F.3d 1225, 1239 (5th Cir. 1994).

### B. Eleventh Amendment Immunity

Defendants assert Eleventh Amendment Immunity for monetary damages against him in their official capacities as employees of a state agency. (Docket Entry No.19). Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). Absent waiver, neither a state nor agencies acting

under its control are subject to suit in federal court. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 89 (1982). To the extent plaintiff sues defendants for monetary damages in their official capacities, as employees of TDCJ-CID or UTMB, plaintiff's claims are barred by the Eleventh Amendment.

## C. Qualified Immunity

Defendants also assert the affirmative defense of qualified immunity. (Docket Entry No.19). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, – U.S. –, 129 S.Ct. 808, 818 (2009).

### 1. Excessive Force

Defendants claim that plaintiff's alleged injuries were no more than *de minimis*; therefore, he cannot show that he sustained an actionable Eighth Amendment violation. (Docket Entry No.19). Defendants further allege that their actions were objectively reasonable under the circumstances. (*Id.*).

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The central question that must be resolved an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. Thus, unlike a "conditions of confinement" claim for which an inmate only has to establish that a prison official acted with deliberate indifference, an excessive force claim requires a prisoner to establish that the defendant acted maliciously and sadistically. *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (discussing *Hudson*). In determining whether an Eighth Amendment excessive force claim has been established, courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered. *Hudson*, 503 U.S. at 7. In applying the *Hudson* factors, courts must remember "that prison officials 'may have had to act quickly and decisively.'" *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (citation omitted). Moreover, "[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (citation omitted).

The Fifth Circuit noted that, in *Hudson*, the Supreme Court "placed primary emphasis on the degree of force employed in relation to the apparent need for it, as distinguished from the extent of the injury suffered." *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999) (citing *Hudson*, 503 U.S. at 7). The Supreme Court has noted that "'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" *Wilkins v. Gaddy*, - U.S. -, 130 S.Ct. 1175, 1176 (2010) (quoting *Hudson*, 503 U.S. at 4). The Court recognized that when prison officials maliciously and sadistically use force to cause harm, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. The absence of serious injury, however, is not irrelevant to Eighth Amendment analysis. *Id*. at 7. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id*. quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The extent of injury may also provide some indication of the amount of force applied. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. "The Eighth Amendment's prohibition of ''cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id*. quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir .1973).

The record, viewed in plaintiff's favor, shows that correctional officers used force to restrain plaintiff after he refused an order to retrieve his ID card and after he resisted their efforts to place him against the wall. Although plaintiff claims that he complied with the order to

retrieve his ID and that the force incident occurred after he was stopped a second time by the correctional officers, the record does not support such claim.

In Step 1 Grievance No.2008062126, filed the day after the use-of-force incident,[1] plaintiff made no mention of the ID card or his compliance with Officer Boone's order to retrieve the card. (Docket Entry No.19-2, page 15). Instead, plaintiff stated the following: He was "pulled over" for talking in the hallway by Officer Boone. Boone ordered him to submit to a strip search and to give up his pens and plaintiff complied. Boone then ordered plaintiff "to stand on the wall." Sgt. M. Miller came up to him, crowded his space, and got all up in his face. Plaintiff stepped back but M. Miller continued to come closer and plaintiff asked him to give him some space. Sgt. M. Miller then hit him. (*Id.*). Plaintiff was found guilty of a disciplinary violation for failing or refusing to obey the order to retrieve the ID card. Neither the inmate nor the guard, who plaintiff called at the disciplinary proceeding as witnesses to his compliance, gave statements supporting plaintiff's allegation that he retrieved the card from his housing wing.[2]

Officer Boone reported in the Use of Force Report, which he filed on the day of the incident, that he strip-searched plaintiff and observed that plaintiff did not have his ID card. (Docket Entry No.19-2, page 11). He ordered plaintiff to return to his housing unit and retrieve the card but plaintiff refused and cursed Boone. (*Id.*). Boone testified to the same at the

---

[1] Plaintiff did not give a written statement on the day of the incident but he vocalized his anger as he was escorted to the infirmary and thereafter. (Docket Entry No.23).

[2] Plaintiff's Counsel-Substitute reported on an Investigation Worksheet dated January 6, 2008, that plaintiff indicated that the charges against him were a lie and that the officers had beat him up. (Docket Entry No.19-4, page 11). Counsel-Substituted noted on the Worksheet that plaintiff requested SSI Perkins and Officer S. Butcher as witnesses. (*Id.*). Plaintiff claims that offender Perkins retrieved his ID card and that Sgt. Butcher saw Perkins hand him the ID card. (Docket Entry No.1). Counsel-Substitute interviewed the witnesses and the charging officer. (Docket Entry No.19-4, page 12). Offender Perkins stated that he was not around but in the chow hall. (*Id.*, page 9). Officer Butcher stated that plaintiff refused to go into his house and cursed. (*Id.*, page 10).

disciplinary hearing in January 2008. (Docket Entry No.19-4, page 13). Boone called for a supervisor and Sgt. Miller responded. (Docket Entry No.19-2, page 11). Plaintiff pointed his finger in Boone's face in an aggressive manner and Miller ordered Boone to place plaintiff against the wall. (*Id.*).

Sgt. Markette Miller reported in the Use of Force Report that Officer Boone called him for assistance. (Docket Entry No.19-2, page 13). When he arrived on the corridor, he saw plaintiff raise his right arm in an aggressive manner and point his finger in Boone's face. (*Id.*). Miller instructed Boone to place plaintiff against the wall. (*Id.*).

Plaintiff does not proffer a reason for Sgt. M. Miller ordering Boone to place plaintiff against the wall and he does not refute statements given by Boone and M. Miller in reports generated the day of the incident that he cursed Boone, made threatening motions with his hand, and resisted Officer Boone's attempt to assist plaintiff to the wall.[3]

The record, however, does not affirmatively show when plaintiff was cuffed, nor the amount of force used by the officers to restrain plaintiff. Plaintiff contends that Sgt. M. Miller punched him on the back of his head and kicked him, Officer Boone hit him with a large brass key and kicked him as he lay on the floor in handcuffs, Officer Dossey punched and kicked him in the head several times, and one unknown officer punched and kicked him. (Docket Entry No.1). Plaintiff claims that he blacked out. (*Id.*).

Plaintiff also claims that Sgt. M. Miller removed the hand restraints after the incident because the video-camera operator was within range and that the video-camera operator filmed M. Miller restraining plaintiff on the floor and putting the cuffs back on him. (*Id.*). The

---

[3] In the Offense Report, which Officer Boone filed on the date of the incident and charged plaintiff with two Level 2 disciplinary violations, Boone stated that he ordered plaintiff to retrieve his ID card from his assigned wing and plaintiff refused. (Docket Entry No.19-2, page 31). Boone called for a supervisor and when the supervisor arrived, plaintiff was belligerent and his fist was clenched. (*Id.*). Thereafter, a use of force took place. (*Id.*).

video-recording of the incident, however, does not show Sgt. M. Miller cuffing plaintiff or plaintiff lying prone on the floor. (Docket Entry No.23).

Plaintiff did not indicate in his Step 1 Grievance when he was cuffed or who cuffed him but stated that Miller hit him after he was handcuffed, and thereafter, he went to the ground and balled up as Miller stomped, kicked, and punched him. (Docket Entry No.19-2, page 15). At the disciplinary hearing on January 7, 2008, plaintiff stated that he complied with the order to put his hands behind his back and the officers knocked him down and beat him up, "cuffed behind his back." (Docket Entry No.19-4, page 14).

Officer Boone stated in the Use of Force Report that plaintiff resisted as he attempted to place plaintiff against the wall, so Boone placed his hands on plaintiff's upper body and brought him to the floor; Boone indicated that thereafter, he applied hand restraints to plaintiff and maintained control of plaintiff's lower body. (Docket Entry No.19-2, page 11). Sgt. M. Miller reported in his Report, filed the day of the incident, that plaintiff resisted Boone's attempts to place plaintiff against the wall, so Miller assisted Boone by grabbing plaintiff's upper body. (Docket Entry No.19-2, page 13). Miller and Boone placed plaintiff on the ground to gain control and Boone cuffed plaintiff. (*Id*.). Miller ordered plaintiff to stop resisting and plaintiff complied. Neither officer stated that they hit, punched, or kicked plaintiff.

Sgt. Gabriel Pinion reported that he responded to a radio call for officer assistance. (Docket Entry No.19-4, page 20). He saw Sgt. Markette Miller and Officer Daniel Whitehead apprehending plaintiff on the floor and applying hand restraints. Pinion secured the corridor from offenders standing nearby. (*Id*.). Sgt. Cavanaugh gave him the video camera and Pinion recorded the Use of Force as Cavanaugh narrated. Dossey and Whitehead escorted plaintiff to the infirmary. (*Id*.).

None of the other officers who responded to the incident stated that they participated in the alleged assault or saw anyone hitting, kicking, punching, or abusing plaintiff. Instead, they reported that when they arrived, plaintiff was cuffed and restrained on the floor.[4] Moreover, none of the officers reported that plaintiff had blacked out, as he alleges in his complaint. The video-recording of plaintiff being escorted to the infirmary shows an alert, talkative, able-bodied man walking without apparent injury through the prison corridor to the infirmary. (Docket Entry No.23). No injuries are visible on the video-tape and plaintiff's appearance and demeanor are not of the nature one might expect if he had been beaten to the point where he blacked out.

Moreover, the injuries noted in the Use of Force Report and plaintiff's medical records are not typical of injuries that one might suffer if subjected to such a brutal beating by several officers, as plaintiff alleges. The Use of Force Report dated December 14, 2007, reflects that plaintiff suffered a bruised area to his right ear and left neck and that he complained of back pain. (Docket Entry No.19-2, page 27). The injuries were classified as minor. (*Id.*). The report, signed by LVN Perry, also shows that plaintiff was already on pain medication at that time. (*Id.*). Notations on the photographs taken of plaintiff's injuries, show that he suffered a

---

[4] Officer Kenneth Dossey reported that he responded to an officer fight call and saw Sgt. Miller and Officer Boone holding plaintiff in the prone position restrained on the ground; Boone held plaintiff's lower body and Miller held his upper body. (Docket Entry No.19-4, page 19). Dossey relieved Miller and Sgt. Whitehead relieved Boone. (*Id.*). Dossey and Whitehead then assisted plaintiff to his feet and escorted him to the infirmary for a physical examination and later to the shower and cell. (*Id.*).

Officer Daniel Lynn Whitehead reported that he responded to a fight call and found that plaintiff had already been placed on the floor and in hand restraints. (*Id.*, page 21). He restrained plaintiff's right arm; then he and Officer Dossey assisted plaintiff to his feet and escorted plaintiff to the infirmary for a prehearing detention examination. (*Id.*).

Sgt. Lync Cavanaugh reported that he heard an officer yell "fight" in the hallway and responded to the corridor where he saw plaintiff on the floor, restrained by Officers Dossey and Whitehead. (*Id.*, page 18). Sgt. Gabriel Pinon arrived with the video camera and Cavanaugh began the narrative. (*Id.*). He ordered plaintiff to his feet. (*Id.*). Dossey and Whitehead assisted plaintiff and escorted him to the infirmary. (*Id.*).

contusion and bruise to his right ear, a nodule to the back of his head and bruising to the left side of his neck.[5] (*Id*., page 30). Pre-segregation medical notes reflect the same injuries and note plaintiff's complaints of lower back and neck pain. (Docket Entry No.21). Nurse Perry, the examining nurse found no bruising or redness to plaintiff's back and noted that he was "very uncooperative with exam." (*Id*.). The video-recording supports Nurse Perry's findings.

Plaintiff does not state the extent of his injuries in his complaint;[6] nor has he filed a response to the motion for summary judgment in which he challenges defendants' assessment of his injuries. Instead, plaintiff claims that LVN Perry was instructed what to put in the medical report. The video-recording, however, does not show that she was instructed on what to document in the medical report. (Docket Entry No.23). Medical notes from a sick call examination four days after the altercation affirm Nurse Perry's findings. The medical notes by a physician's assistant reflect that plaintiff complained that he was in a use of force incident, that he got kicked in the head, and that he suffered a contusion to his ear and the back of his head, bruising to his neck, and back pain, but that he was already getting better. (*Id*.). No visual changes, no bruises or lesions to plaintiff's face, head, or neck, no loss of consciousness, or apparent distress were noted. (*Id*.). The physician's assistant further noted that plaintiff was cuffed but that he had good range of motion to his back and that his contusions were resolved. (*Id*.).

---

[5] Sgt. Cavanaugh also noted in his report that he observed LVN Perry examine plaintiff and note a minor injury, *i.e.,* a bruise to his head. Cavanaugh took five photographs of plaintiff. (Docket Entry No.19-4, page 18). The video-recording supports Cavanaugh's report. (Docket Entry No.23).

[6] In the More Definite Statement filed in Civil Action No.4:08cv3421, dated December 22, 2008, plaintiff stated that he felt dizzy and his vision was blurry; he complained of knots in his head, a red neck, and back pain on his legs. *Id*., Docket Entry No.16, page 5. He stated that he had yellow bruises and was in bed for five days, unable to eat because the pain was unbearable. *Id.* He also stated that he had bruises and scratches on both wrists due to the handcuffs. *Id.*

From this record, the Court finds that the use of force could plausibly have been thought necessary to restore order and discipline in light of plaintiff's defiant behavior toward Officer Boone when ordered to retrieve his ID card and in light of his resistance to Boone's and Miller's efforts to control him as he was cuffed and taken to the ground. The undisputed record shows that plaintiff's injuries were minor and not consistent with the brutal beating that he alleges in his original complaint. Although Miller may have hurled an insult to plaintiff's heritage and religion during the altercation, the record does not support a finding that Miller or any of the officers used force maliciously or sadistically to cause harm but to restore order and discipline.

Based on this record, the Court finds that plaintiff has not shown the existence of a fact issue that would give rise to a claim that defendants violated the Eighth Amendment's prohibition against the excessive use of force. Therefore, the Court need not address the second prong of the qualified immunity analysis. Defendants are entitled to summary judgment on the affirmative defense of qualified immunity.

### 2. Bystander Liability

A prison guard has a duty to intervene and attempt to end an assault on an inmate. *Buckner v. Hollins,* 983 F.2d 119, 122 (8th Cir. 1993); *see also Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995) (citing *Smith v. Dooley,* 591 F.Supp. 1157, 1169 (W. D. La. 1984), *aff'd*, 778 F.2d 788 (5th Cir.1985)). The requisite mental state in situations where prison officials do not respond with the physical use of force is that of deliberate indifference. *MacKay v. Farnsworth,* 48 F.3d 491, 493 (10th Cir. 1995). An officer may be liable under section 1983, under a theory of bystander liability, if he (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act.

16

*Randall v. Prince George's Cty., Md.,* 302 F.3d 188, 203-04 (4th Cir. 2002). The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. *Id.*, 302 F.3d at 204 n. 24.

In this case, the record does not show that defendants violated the Eighth Amendment by the alleged use of force; therefore, plaintiff's claims that defendants Steve Miller, Captain Gabriel Pinion, Kenneth Dossey, or Officer John Doe 2 failed to intervene in the alleged assault. Moreover, the record does not reflect that Lt. Steve Miller was present during the use-of force incident or thereafter.[7]

### 3. Medical Care

The Eighth Amendment's prohibition against cruel and unusual punishment also forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the

---

[7] In fact, plaintiff complained in his Step 1 Grievance No.20080621216 that Sgt. Pena stood by just looking. (Docket Entry No.1, page 13). Sgt. Pena was not named as a party to the suit.

part of the defendants." *Id.* Mere negligence does not constitute a section 1983 cause of action. *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff states no facts that would give rise to a plausible claim that LVN Perry engaged in cruel and unusual punishment by denying or delaying adequate medical care, or by misrepresenting the extent of plaintiff's injuries. In fact, the video-recording of the pre-detention examination reflects that plaintiff pulled away from Perry and refused to allow her to complete the examination; he also refused to comply with her orders to remain silent while she attempted to obtain his vital signs. (Docket Entry No.23).

Plaintiff does not allege and the record does not show that he suffered a serious medical injury or that any defendant could infer or was aware that he might have suffered the same. Moreover, plaintiff's records show that he was examined four days after the incident. Accordingly, to the extent that he complains that LVN Perry violated his Eighth Amendment right by misrepresenting his injuries and thereby covering up the use of excessive force, such claim is not supported by the record. Accordingly, defendants are entitled to summary judgment.

## IV. CONCLUSION

Based on the forgoing, the Court ORDERS the following:

1. Plaintiff's "Motion for Leave to File an Amended Complaint" (Docket Entry No.9) is GRANTED.

2. Plaintiff's "Motion for Appointment of Counsel" (Docket Entry No.12) is DENIED. A civil rights complainant has no right to the automatic appointment of counsel. *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982) (per curiam). Plaintiff's complaint is not particularly complex and does not present exceptional circumstances; moreover, plaintiff has proven capable of self-representation.

3. Plaintiff's "Motion to Notify Courts of Plaintiff's Conditions" (Docket Entry No.13) is DENIED, as moot.

4. Defendants' "Motion for Leave to File Motion for Summary Judgment Out of Time" (Docket Entry No.18) is GRANTED.

5. Defendants' "Motion for Summary Judgment" (Docket Entry No.19) is GRANTED. All claims against all defendants are DENIED and this civil action is DISMISSSED WITH PREJUDICE.

6. Plaintiff's "Motion for Reconsideration of Magistrate Judge's February 23, 2010, Order Granting Exhibit C, Defendants' Motion for Summary Judgment and to Respond the Defendants' Motion for Summary Judgment" (Docket Entry No.24) is DENIED as moot. Plaintiff advised the Court on May 24, 2010, that he had received a copy of the summary judgment motions and exhibits.

7. All other pending motions, if any, are DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 30th day of August, 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE